J-S29022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICKOLAS BLAINE STITT | : | |
| | : | |
| Appellant | : | No. 1371 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 2, 2019
In the Court of Common Pleas of Blair County
Criminal Division at CP-07-CR-0002186-2017

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                   **FILED: OCTOBER 12, 2022**

Nickolas Blaine Stitt (Appellant), appeals *pro se* from the judgment of sentence imposed after a jury convicted him of possession with intent to deliver (PWID), possession of a controlled substance, and criminal use of a communication facility (CUCF).[1]  Upon review, we affirm in part, vacate in part, and remand for an ability-to-pay hearing pursuant to 42 Pa.C.S.A. § 9726, and consideration of Appellant's after-discovered evidence claim.

Appellant's convictions arise from his sale of narcotics to a confidential informant (CI) on May 6, 2017.  N.T., 12/13/18, at 37, 74.  The CI approached Altoona Police Sergeant Christopher Moser and offered to purchase Suboxone

---

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (16), and 18 Pa.C.S.A. § 7512.

from Appellant in the area around the Kettle Inn. *Id.* at 37, 74-75, 117-18. Thereafter, Altoona Police Sergeant Joseph Merrill strip-searched the CI, and Sergeant Moser provided the CI with $100 in pre-recorded buy money. *Id.* at 39-40, 76-77, 117, 119. Sergeant Merrill drove the CI to a parking lot near the Kettle Inn. *Id.* at 77-80. During the drive, the CI used his girlfriend's mobile phone, which had Appellant's name and number, to text Appellant. *Id.* at 77-80, 105-06, 120-21, 132. Appellant responded and Sergeant Merrill observed the texts in real time. *Id.* at 121.

Appellant texted the CI to go to Appellant's nearby residence at 714 East Walton Avenue. *Id.* at 40, 79-80, 120-21. Appellant told the CI he would turn on an outside light. *Id.* at 80. When the CI arrived, he exited the car and continued to text Appellant due to the CI's difficulty finding the residence. *Id.* at 81-82. Appellant turned on the outside light and the CI entered the residence; the CI purchased the Suboxone (which took approximately 2 minutes), and exited. *Id.* at 42, 81-84, 123-24. Neither police officer saw Appellant. *Id.* at 42, 123-24, 128, 132.

The CI returned to the car and gave Sergeant Merrill the Suboxone. *Id.* at 43, 84, 123-24. The police and CI drove back to the police station, where Sergeant Merrill conducted a second strip-search of the CI. *Id.* at 44, 86, 126. The CI drafted a written statement describing the purchase, and Sergeant Moser photographed the texts between the CI and Appellant on the CI's girlfriend's phone. *Id.* at 44-45, 87, 126-28.

Appellant was subsequently arrested and charged with the above crimes. *Id.* at 137. Upon arrest, Appellant confirmed his address as 714 East Walton Avenue, and his telephone number as the one the CI texted during the controlled buy. *Id.* at 138. Also at the time of his arrest, Appellant was on parole and wearing an ankle monitor. *Id.* at 4. Police confirmed through State Parole Agent Margie Cartwright that the ankle monitor showed Appellant present at East Walton Avenue when the CI purchased the narcotics. *Id.* at 4-5.

> On December 14, 2018, a Blair County jury convicted [Appellant of the above offenses]. On April 2, 2019, [the trial c]ourt sentenced [Appellant] to an aggregate sentence of 33 to 96 months' incarceration at a State Correctional Institution on the counts of [PWID] and [CUCF]. The [trial c]ourt did not impose a sentence on the count of possession of a controlled substance. [The trial court also ordered Appellant to pay a $500 fine.]

Trial Court Opinion, 1/26/22, at 1-2.

Appellant sought appellate review, which has been delayed by a series of procedural missteps. The trial court explained:

> Edward E. Zang, Esquire, represented [Appellant] at trial and through the initial appeal period. The Superior Court dismissed the initial appeal, which was docketed to 586 WDA 2019, for failure of counsel to file a brief. [Appellant] filed a *pro se* PCRA petition on November 8, 2019, and Paul M. Puskar, Esquire, was appointed as PCRA counsel on January 10, 2020. On March 11, 2020, [Appellant] filed a *pro se* petition to supplement the PCRA petition asking to reinstate his direct appeal rights. [The trial c]ourt dismissed the PCRA petition on March 31, 2020, granted the request to reinstate direct appeal rights, and subsequently appointed new appellate counsel, Robert S. Donaldson, Esquire, to represent [Appellant] through the direct appeal.

- 3 -

Mr. Donaldson was given two weeks from August 18, 2020 to perfect the appeal, and he filed a notice of appeal *nunc pro tunc* on September 14, 2020. The case was docketed at 981 WDA 2020. The Superior Court directed the filing of a docketing statement on September 23, 2020. Counsel failed to file the docketing statement, and the Superior Court dismissed the appeal on November 10, 2020 pursuant to Pa.R.A.P. 3517.

[After Appellant contacted the trial court inquiring about his direct appeal and seeking leave to proceed *pro se* on direct appeal, the trial c]ourt held a [hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998),] on February 11, 2021, and determined [Appellant] knowingly, voluntarily, and intelligently waived his right to counsel, and also allowed him to proceed *in forma pauperis*. At the same hearing, [the trial c]ourt again reinstated [Appellant's] direct appeal rights. …

Following the reinstatement of his direct appeal rights, [Appellant, without leave of court, filed untimely] post-sentence motions on February 18, 2021. … No order denying the post-sentence motions was entered until October 26, 2021. [Appellant] then filed a notice of appeal November 12, 2021, and a statement of matters complained of on appeal on December 6, 2021.

Trial Court Opinion, 1/26/22, at 2-3 (footnote omitted).

Although there is a timeliness issue with Appellant's filing of his notice of appeal, we view the events leading to the filing as constituting a breakdown in the court's process.[2] We therefore review the merits of Appellant's issues.

---

[2] Generally, appellate courts cannot extend the time for filing an appeal. **See** Pa.R.A.P. 105(b). Accordingly, this Court on December 13, 2021, issued a rule to show cause as to why the appeal should not be quashed as untimely. Appellant filed a response on December 23, 2021, arguing his prior appeals were dismissed due to his court-appointed counsels' failures, and he has been deprived of meaningful appellate review. We discharged the rule to show cause on January 18, 2022.

Appellant presents five issues for our review:

1. Whether sufficient evidence exists to support the [CUCF] where (a) the alleged text messages were not authenticated, and (b) the evidence of record does not support an inference that the alleged text message originated from [Appellant], and (c) the record does not support [Appellant's] use of a communication device, and (d) the text messages merely adduce directions to a location and no criminal intent[?]

2. Whether Appellant's right to confrontation was denied where the trial court allowed hearsay testimony, through stipulation, of what a witness would claim when (1) the witness was not unavailable, and (2) the stipulation amounted to an impossibility, and (3) Appellant's jury was not queried during *voir dire* as to their knowledge of the non-testifying witness and her occupation as a parole officer, and (4) under no known circumstances could the non-testifying witness give competent evidence without abrogating Appellant's presumption of innocence, and (5) the stipulation was overly prejudicial and erroneously expanded beyond its misbegotten scope, and (6) the stipulation abrogated Appellant's right to present a defense[?]

3. Whether the trial court erred in allowing in-court identifications of Appellant, by two police officers, when neither officer witnessed Appellant commit any crime, and such in-court identifications amounted to impermissible prosecutorial vouching[?]

4. Did the trial court err in imposing a fine on the indigent [Appellant] without conducting an ability to pay hearing, in derivation of 42 Pa.C.S.A. § 9726(c), amounting to an illegal sentence?

---

The record reflects the February 11, 2021, order reinstating Appellant's direct appeal rights did not advise Appellant about the timeliness requirement for his appeal, and that filing an untimely post-trial motion would not toll the appeal period. The court's failure to advise Appellant of his rights constitutes a breakdown in the court's process. *See Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) (compiling cases in which the "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court ... either failed to advise Appellant of his ... appellate rights or misadvised him"); Pa.R.A.P. 907.

5. Whether after discovered evidence is sufficient to grant a new trial[?]

Appellant's Brief at 5-7 (issues reordered for disposition).

In his first issue, Appellant assails the sufficiency of the evidence. When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

With respect to CUCF, the Crimes Code provides:

**(a) Offense defined.**--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

\* \* \*

**(c) Definition.**--As used in this section, the term "communication facility" means a public or private instrumentality used or useful

in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512.

Appellant does not claim the Commonwealth failed to prove the elements of the offense. Rather, he argues the text messages were not properly authenticated and the jury erred in crediting the CI's testimony. Appellant's Brief at 21-22.

Regarding authentication of the text messages:

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment [but is established where] the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

Here, trial counsel objected to the admission of the texts on the basis of late notice; he did not assert lack of authentication. N.T., 12/13/18, at 4-9.

It is well-established that [a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. **If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.**

*Commonwealth v. McGriff*, 160 A.3d 863, 871-72 (Pa. Super. 2017) (emphasis added). Thus, Appellant waived his challenge with respect to

- 7 -

authentication. However, even if Appellant had preserved the issue, no relief is due.

Pennsylvania Rule of Evidence 901 provides that to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This Court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901. *Commonwealth v. McKellick*, 24 A.3d 982, 988 (Pa. Super. 2011) (citations and internal quotation marks omitted); *see also* Pa.R.E. 901(b)(1).

Regarding text messages, we have held:

[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

*Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. 2011) (citation omitted).

As discussed above, the CI testified he used his girlfriend's cell phone, and Appellant's name and phone number were saved in the phone. N.T., 12/13/18, at 77-80, 105-06. Sergeant Moser testified Appellant gave the same phone number to the police when he was arrested. *Id.* at 138. Also, Sergeant Merrill witnessed the CI texting that number while arranging and driving to the controlled buy. *Id.* at 77-80, 105-06, 120-21, 132. When the

CI initially walked past the 714 East Walton Avenue address, he received a text about the outside light. *Id.* at 80-82. Sergeant Moser testified that he photographed the texts after the controlled buy, when police and the CI returned to the police station. *Id.* at 44-45, 87, 126-28. This evidence supports a conclusion that the text messages were authenticated by circumstantial evidence, such that the trial court did not abuse its discretion in admitting them at trial. *See Koch*, 39 A.3d at 1005.

Appellant also claims the jury wrongly credited the CI's testimony. Appellant's Brief at 21-22. A challenge to a witness's credibility implicates the weight of the evidence. *See Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013); *Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (a claim that the jury should have believed appellant's account, rather than that of victim, goes to weight, not sufficiency of evidence). This Court cannot consider, in the first instance, a claim the verdict is against the weight of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003).

Here, the trial court reinstated Appellant's direct appeal rights, but not his right to file a post-sentence motion. Order Reinstating Direct Appeal Rights, 2/11/21, at 1. Thus, Appellant's motion, which was necessary to preserve a weight claim, was untimely filed without leave of court. An untimely post-sentence motion does not preserve issues for appeal.

*Commonwealth v. Wrecks*, 931 A.2d 717, 719-20 (Pa. Super. 2007).

Appellant's weight claim does not merit relief.

In his second issue, Appellant alleges the trial court denied his right to confront witnesses by admitting the following stipulation into evidence:

> [A] witness, a Ms. Cartwright, who would testify that [Appellant] was at 714 East Walton Street Avenue in Altoona at the time and date of the alleged drug deal.  So Ms. Cartwright would testify that at the time and date of the alleged drug deal, Mr. Stitt was present when that drug deal occurred at that location.

N.T., 12/13/18, at 112.  Both counsel agreed to the stipulation on the record. *Id.*  Appellant did not voice an objection, and his counsel advised the trial court that he had discussed the stipulation with Appellant, who agreed to it. *Id.* at 107-12.  Also, the jury was not informed Ms. Cartwright was a state parole agent or that she was aware of Appellant's location because he was wearing an ankle monitor while on state parole.  *Id.* at 10-13, 64-67.

Appellant first raised this issue in his untimely post-sentence motion; Appellant lodged no objection at trial.  *See Wrecks*, *supra* at 719-20. Appellant cannot avoid waiver on appeal by claiming he disagreed with counsel.  Pennsylvania law does not allow hybrid representation, *see Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013), and Appellant is bound by what transpired at trial.  *See United States v. Gonzalez*, 553 U.S. 242, 248-49 (2008).  Appellant's second issue regarding the stipulation to Ms. Cartwright's testimony does not merit relief.

In his third issue, Appellant contends the trial court erred by allowing "in-court identifications of Appellant, by two police officers, when neither officer witnessed Appellant commit any crime, and such in-court identifications amounted to impermissible prosecutorial vouching." Appellant's Brief at 31; *see also id.* at 31-36. Again, we are constrained to find waiver.

Appellant did not object to the officers' identifications at trial. N.T., 12/13/18, at 37-38, 127. It is well-settled that failure to lodge a contemporaneous objection results in waiver of a claim on appeal. *See May*, 887 A.2d at 758 ("To the extent the claims would sound in trial court error, they are waived due to the absence of contemporaneous objections."); *Commonwealth v. Dougherty*, 860 A.2d 31, 37 (Pa. 2004) (failure to object results in appellate waiver); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Waiver notwithstanding, Appellant misapprehends the record. Neither Sergeant Moser nor Sergeant Merrill identified Appellant as the person who sold drugs to the CI; rather, both officers testified they did not see who sold the drugs. N.T., 12/13/18, at 42, 123-24, 128, 132. As the trial court found, "the two police officers' identifications … of Appellant were appropriate as … they identified [Appellant] as the person they knew as Nickolas Stitt, who was the subject of their investigation." Trial Court Opinion, 1/26/22, at 7; *see also* N.T., 12/13/18, at 37-28, 127.

In addition, improper bolstering of or vouching for a government witness occurs "where the prosecutor assures the jury that the witness is credible." **Commonwealth v. Cousar**, 928 A.2d 1025, 1041 (Pa. 2007). "[S]uch assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." **Id.** This places "the prestige of the government behind the witness through personal assurances that the witness is believable, and it indicates that information unknown to the jury supports the witness's testimony." **Commonwealth v. King**, 57 A.3d 607, 625 (Pa. 2012). Appellant fails to cite evidence to support his claim of improper bolstering. **See** Appellant's Brief at 31-36. The record does not support Appellant's claim, as our review reveals the prosecutor did not make any assurances regarding the officers' credibility. Appellant's third issue lacks merit.

In his fourth issue, Appellant's contends the trial court illegally imposed a $500 fine as part of Appellant's sentence without holding a hearing on his ability to pay. Appellant's Brief at 14-16; Order, 4/2/19, at 2. Both the trial court and Commonwealth agree with Appellant, and request we vacate the fine and remand for an ability to pay hearing. Trial Court Opinion, 1/26/22, at 3; Commonwealth's Brief at 6.

42 Pa.C.S.A. § 9726 provides:

> **(b) Fine as additional sentence.**--The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation …

\* \* \*

> **(c) Exception.**--The court shall not sentence a defendant to pay a fine unless it appears of record that:

> (1) the defendant is or will be able to pay the fine;

\* \* \*

> **(d) Financial resources.**--In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.C.S.A. § 9726(b), (c)(1), and (d). Our Supreme Court has observed that Section 9726(c) "instructs sentencing courts not to impose a fine absent record evidence of the defendant's ability to pay." *Commonwealth v. Ford*, 217 A.3d 824, 829 (Pa. 2019) (citation omitted). As the trial court did not hold a hearing as to Appellant's ability to pay, we vacate the $500 fine and remand for a hearing.

In his final issue, Appellant argues the trial court erred in failing to grant a new trial based upon his claim of after-discovered evidence. Appellant's Brief at 37-39. The Commonwealth agrees that Appellant is entitled to a remand for a hearing on this claim. *See* Commonwealth Brief at 18 ("While the Commonwealth does not make any assertions as to any validity of the Appellant's claim as to after-discovered evidence, the law does tend to support a hearing be held before the trial court to review the Appellant's assertions.").

The Rules of Criminal Procedure provide that a "post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in

writing promptly after such discovery." Pa.R.Crim.P. 720. The Comment states that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment.

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

*Commonwealth v. Miller*, 172 A.3d 632, 650 (Pa. Super. 2017) (citation omitted). The evidence must be "producible and admissible." *Commonwealth v. Castro*, 93 A.3d 818, 825 (Pa. 2014).

Here, Appellant asserts after-discovered evidence obtained from the CI's girlfriend (now ex-girlfriend), whose phone the CI used to text Appellant during the controlled buy. According to Appellant, the girlfriend/ex-girlfriend "became aware" that the CI "set up" Appellant. Appellant's Brief at 39. Consistent with Pa.R.Crim.P. 720, *Miller*, and *Castro*, we remand for the trial court to consider this claim.

In sum, Appellant's first, second and third issues do not merit relief. As to Appellant's fourth and fifth issues concerning Appellant's $500 fine and claim of after-discovered evidence, we vacate and remand for a hearing on Appellant's ability to pay, as well as his claim of after-discovered evidence.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2022